UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KENNEDY K. IWUOHA**<br>    **#A-071531139**<br>**VS.**<br><br>**WARDEN DAVID VIATOR, ET AL.** | **CIVIL NO. 6:14-0402**<br><br>**JUDGE DOHERTY**<br><br>**MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

Currently before the court is a petition for writ of *habeas corpus* filed by *pro se* petitioner, Kennedy K. Iwuoha, on February 14, 2014, pursuant to 28 U.S.C. § 2241. By this petition, Petitioner challenges his post-removal-order detention. More specifically, Petitioner alleges that he has been in post-removal-order custody pursuant to 8 U.S.C. § 1231 in excess of both the statutory 90 day removal period and the jurisprudential six month removal period, and that his detention therefore violates the Constitution and principles set forth by the United States Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). He further alleges that the ICE has been unable to remove him. Accordingly, Petitioner seeks his release from custody under an order of supervision.

The government has Opposed the petition. [rec. doc. 21].

This matter has been referred to the undersigned magistrate judge for review, report, and recommendation in accordance with 28 U.S.C. §636(b)(1)(B).

## FACTUAL AND PROCEDURAL HISTORY

Petitioner, a citizen of Nigeria, alleges that he was ordered removed on February 1, 2009 and he was taken into ICE custody on August 13, 2013.[1]

In November, 2013, after Petitioner indicated that he feared returning to Nigeria, an asylum officer interviewed Petitioner and found Petitioner did not establish a reasonable fear of persecution or torture; accordingly, Petitioner remained in detention for further proceedings. [rec. doc. 4-3, pg. 27-28 and 7].

In January, 2014, the matter was referred to the immigration judge for determination of Petitioner's request for asylum and withholding of removal; both requests were denied. [*Id.* at pg. 28]. Petitioner's request for reconsideration was denied on February 20, 2014. [*Id.* at pg. 27-29]. Accordingly, on February 26, 2014, ICE determined that Petitioner should remain in detention for further proceedings. [*Id.* at pg. 31].

The government has provided documentation which establishes that after February, 2014 and the filing of the instant petition, travel documents were obtained for Petitioner's removal to Nigeria. Accordingly, he was transported to the airport in Houston, Texas on April 16, 2014 to effectuate removal. However, as ICE officers were escorting Petitioner to board the airplane, Petitioner laid down on his back at the gate,

---

[1]The exhibits submitted by petitioner demonstrate that petitioner's 1992 Order of Removal was re-instated in 2009 after petitioner re-entered this country without inspection after having been previously removed in 2007. [rec. doc. 4-3, pg. 27].

punched one of the officers and then continued punching and kicking the officers until he was subdued by use of a conductive energy device. [rec. doc. 21-2, pg. 1-2]. Accordingly, Petitioner was apparently not permitted to board the airplane and returned to custody.

As a result of this incident, the State of Texas is pursuing criminal charges against Petitioner, and it is expected that Petitioner will be federally indicted as well. [rec. doc. 21-1].

## LAW AND ANALYSIS

In *Zadvydas v. Davis*, 121 S.Ct. 2491 (2001), the United States Supreme Court held that in order for post-removal detention under 8 U.S.C. §1231(a)(6) to be constitutional, it must be limited "to a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 121 S.Ct. at 2498. The Supreme Court went on to recognize six months as a presumptively reasonable period of detention for INS detainees following a final order of removal. *Zadvydas*, 121 S.Ct. at 2504-2505.

In the matter before this court, Petitioner has been in post-removal-order detention for a period greater than six months. However, this does not mean that a Petitioner is automatically entitled to release. In *Andrade v. Gonzales,* 459 F.3d 538 (5th Cir. 2006), the Fifth Circuit reiterated that the Supreme Court's holding in *Zadvydas* "creates no specific limits on detention", that "'an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable

3

future'", and that "[t]he alien bears the initial burden of proof in showing that no such likelihood of removal exists." *Andrade*, 459 F.3d at 543 *quoting Zadvydas*, 121 S.Ct. at 2505.[2] Thus, in order for Petitioner to secure his release from custody, he must demonstrate that he has been detained beyond a period reasonably necessary to bring about his removal from the United States and that there is no significant likelihood of removal in the reasonably foreseeable future. For the reasons set forth below, this initial showing has not been made in this case.

Moreover, an alien may also be detained beyond the 90 day removal period pursuant to the statutory authority of 8 U.S.C. § 1231(a)(1)(C).[3] This statute provides for the suspension of the removal period whenever an alien acts in a manner to prevent his removal. *Hook v. Holder,* 2009 WL 2143642, *7 (W.D. La. 2009) *citing Balogun v. I.N.S.,* 9 F.3d 347, 351 (5th Cir. 1993) ("[I]f it is shown that petitioner by his conduct has intentionally prevented the INS from effecting his deportation, the six-month period should be equitably tolled), *Ayigba v. Young*, 2007 WL 2736678, *5-6 (W.D. La. 2007) (finding that the removal period was tolled based on alien's failure to cooperate with

---

[2]In *Andrade* the petitioner "offered nothing beyond his conclusory statements suggesting that he [would] not be immediately removed to Cape Verde following the resolution of his appeals," and the Fifth Circuit therefore found his constitutional challenge to his detention to be without merit. *Andrade*, 459 F.3d at 543-544.

[3]**(C) Suspension of period**
    The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires *or acts to prevent the alien's removal subject to an order of removal.* (emphasis added).

efforts to deport him), *Benn v. Bureau of Immigration and Customs Enforcement,* 82 Fed. Appx. 139, 140 (5th Cir. 2003) (alien's incomplete and conflicting statements to the INS hampered removal efforts and therefore extended the removal period) and *Dumpeh v. Moore,* 2007 WL 3235099, *1 (W.D. Tex. 2007) (citations omitted) ("An alien must cooperate in good faith in his removal."); *Lema v. INS*, 341 F.3d 853, 857 (9th Cir. 2003); *Blankston v. Mukasey*, 261 Fed. Appx. 758, 759 (5th Cir. 2008). This statute, like § 1231(a)(6), does not contain an express limitation on the length of time that an alien may be detained. However, § 1231(a)(1)(C) does not present the same constitutional concerns raised by § 1231(a)(6) because "the risk of indefinite detention that motivated the Supreme Court's statutory interpretation in *Zadvydas* does not exist when an alien is the cause of his own detention." *Hook,* 2009 WL 2143642, at *7 *quoting Rosario v. Gonzales*, 2007 WL 1232207, *5 (W.D. La. 2007) *quoting Pelich v. Immigration and Naturalization Service*, 329 F.3d 1057, 1060 (9th Cir. 2003); *See also Ayigba*, 2007 WL 2736678, at *5; *Amadi v. Young*, 2007 WL 855358, *3 (W.D. La. 2007).

Stated differently, the risk of indefinite detention "does not exist when the alien has the keys [to freedom] in his pocket . . . ." *Lema*, 341 F.3d at 856 *citing Pelich*. Thus, when an alien is the cause of his own detention, he cannot assert a viable constitutional challenge to his indefinite detention because "the detainee controls the clock." *Id. citing Pelich.* Under such circumstances, the "detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future . . . ." *Lema,*

*Pelich, Rosario, supra.*

The above history and the facts before this court establish that Petitioner has been in post-removal-order detention for a period greater than six months. It is undisputed that Petitioner is a citizen of Nigeria. Moreover, it is clear that Nigeria is willing to accept Petitioner – travel documents for Petitioner had already been issued and Petitioner was in the process of boarding the airplane bound for Nigeria when his own intentional criminal conduct intervened. Thus, on the evidence before this court, the undersigned cannot find that Petitioner has established that there is no significant likelihood of removal in the reasonably foreseeable future. Petitioner holds the keys to his freedom, he need only peacefully board the airplane to effectuate his removal and thereby gain his freedom.

Moreover, this court finds that Petitioner's removal period has been suspended and tolled under the statutory provision of § 1231(a)(1)(C) due to his intentional criminal conduct which has prevented his removal. While Petitioner may not want to be removed to Nigeria, his personal preference to stay in this country, like that of numerous other illegal immigrants facing removal, does not negate his obligation to *fully* comply, in good faith, with the removal process, nor does this reason justify his criminal conduct which prevented his removal.

Unlike the detainees in *Zadvydas*, Petitioner is responsible for his own plight. Petitioner's intentional criminal conduct has prevented the ICE from removing him. As such, Petitioner should not be rewarded with release into the United States for his bad

behavior and his criminal refusal to assist officials to effect his removal.

For the reasons discussed above, this court finds that Petitioner has failed to carry his burden demonstrating that there is no likelihood of removal in the reasonably foreseeable future or that he has been detained beyond what is reasonably necessary to bring about his removal from the United States. Accordingly,

**IT IS RECOMMENDED** that this petition be **DENIED AND DISMISSED without prejudice**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C), the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lafayette, Louisiana, May 16, 2014.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE